[Crim. No. 16623. Second Dist., Div. Five. Feb. 24, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT EARL TENNESSEE, Defendant and Respondent.

**COUNSEL**

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Maurice H. Oppenheim, Deputy District Attorneys, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

**OPINION**

**AISO, J.**—The People appeal from an order setting aside an information under section 995 of the Penal Code. (Pen. Code, § 1238, subd. 1.) Defendant was charged by information in count I with illegal possession of seconal, a restricted dangerous drug (Health & Saf. Code, § 11910), and in count II with driving upon a highway while under the influence of intoxicating liquor and a drug (Veh. Code, § 23102, subd. (a)).

It appears that the trial court set aside the information upon the theory that the arrest, which occurred in the City of Pasadena, could not have been

effected legally by deputy sheriffs of Los Angeles County under the circumstances reflected in the transcript of the preliminary hearing.

We have concluded that the arrest was legal and that the order should be reversed.

## I.

Since defendant (respondent) has filed no brief, we shall assume the facts to be as set forth in the People's (appellant's) opening brief. (Rule 17(b), Cal. Rules of Court; *Roth* v. *Keene* (1967) 256 Cal.App.2d 725, 727 [64 Cal.Rptr. 399]; *Relaxacizor, Inc.* v. *W. B. Geissinger & Co.* (1963) 221 Cal.App.2d 19, 21 [34 Cal.Rptr. 269]; *Piercy* v. *De Fillipes* (1963) 215 Cal.App.2d 284, 289 [30 Cal.Rptr. 62].)

"On December 14, 1968, Robert Webb, a uniformed Deputy Sheriff of Los Angeles County, and his partner were in a marked radio car at about 2:25 a.m. driving southbound on Fair Oaks [at a point within Altadena which is policed by the sheriff's office]. A vehicle in front of the [sheriff's car] also proceeding southbound on Fair Oaks attracted Webb's attention because it was weaving in long sweeping curves from the center lane to the curb and back again approximately one block south of Woodbury. This occurred three times in four or five blocks. Fair Oaks is painted for one lane in each direction but it is wide enough to accommodate three lanes of traffic in each direction.

"At Washington and Fair Oaks [within the City of Pasadena], there was a red light for traffic on Fair Oaks and the vehicle was entirely in the westbound lane of Washington Boulevard before it stopped. The vehicle was blocking a westbound traffic lane on Washington.

"The officers activated their red light and the vehicle stopped on Fair Oaks about ¼ block south of Washington. The [defendant], who was the only occupant in the vehicle, staggered back toward the police car. Webb had a suspicion that [defendant] was under the influence of something.

"[Defendant] did not have a driver's license, but had a learner's permit, a very strong odor of an alcoholic beverage on his breath, red bloodshot eyes, and dilated pupils.

"[Defendant] agreed to take a field sobriety test and Webb explained and demonstrated the 'walking heel to toe test.' [Defendant] attempted to perform the test but could not maintain his balance and the test was discontinued. Webb explained and demonstrated a test involving standing on one leg and swinging the stiff second leg forward and backward. [Defendant] attempted this test but couldn't hold his balance and the test was discontinued. Webb formed the opinion that [defendant] was under the influence

of alcohol and placed him under arrest for driving under the influence of alcohol.

"[Defendant] consented to a breathalyzer test at the police station. The reading showed .23. It was stipulated the chemist testified that a person 'with a breathalyzer reading of .23 would be definitely under the influence of alcohol.'

"Subsequently [defendant] was booked and Webb found two red capsules in defendant's wallet.

"It was conceded that the intersection of Washington and Fair Oaks is in the City of Pasadena. The border between Altadena and Pasadena is Montana Street which is one block south of Woodbury."

## II.

On the date of the alleged offenses, section 830.1 of the Penal Code (effective November 13, 1968) was in force. The portion thereof relevant to this case read:

"Any . . . deputy sheriff . . . is a peace officer. The authority of any such peace officer extends to any place in the state:

"(a) As to any public offense committed or which there is probable cause to believe has been committed within the political subdivision which employs him; or . . .

"(c) As to any public offense committed or which there is probable cause to believe has been committed in his presence, and with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of such offense."

The words "public offense" include misdemeanors and infractions as well as felonies. (Pen. Code, § 16.) A peace officer may arrest without a warrant "whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." (Pen. Code, § 836, subd. 1.)

By the time defendant had failed to make a proper stop for a red traffic light at the corner of Washington and Fair Oaks and blocked westbound traffic on Washington (Veh. Code, § 21453, subd. (a)), Deputy Webb had witnessed defendant drive weaving in sweeping curves from the center lane to the curb in the territory outside of Pasadena and his failure to comply with section 21453, subdivision (a), of the Vehicle Code within Pasadena. He had the right and duty to stop defendant under section 830.1, subdivision (c), of the Penal Code, as there was both reasonable and prob-

able cause to believe a public offense had been committed in his presence and that there was danger to both persons and property from a motor vehicle being driven in the manner in which defendant was driving it. Furthermore, Deputy Webb had reasonable cause to believe that defendant perpetrator would escape unless then stopped.

■ When defendant staggered back towards the sheriff's car and had a strong odor of alcohol on his breath, red bloodshot eyes, and dilated pupils, there was probable cause to believe that he was guilty of having driven a motor vehicle upon a highway while under the influence of intoxicating liquor (Veh. Code, § 23102), both in the county territory and in the City of Pasadena. This ensuing development then established even stronger grounds for the deputy sheriff to arrest defendant under section 830.1, subdivision (c), and the additional ground set forth in subdivision (a). The arrest of the defendant was therefore legally effected.

■ The finding of the red capsules in defendant's wallet in the course of the booking procedure was likewise legal. (*People* v. *Ross* (1967) 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606], reversed on other grounds 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850].)

The order setting aside the information is reversed.

Kaus, P. J., and Stephens, J., concurred.