[Crim. No. 17780. Second Dist., Div. Five. Jan. 19, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY LORING BROWN, Defendant and Appellant.

**COUNSEL**

Belan M. Wagner, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Mary Anne Sykulski, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**REPPY, J.**—In an information filed by the District Attorney of Los Angeles County defendant was charged in count I with possession of marijuana, a violation of section 11530 of the Health and Safety Code, and in counts II, III and IV with possession of restricted dangerous drugs, pentobarbital,

seconal and amobarbital, respectively, violations of section 11910 of the Health and Safety Code.

A motion pursuant to section 1538.5 of the Penal Code was denied. In a nonjury trial defendant was found guilty as charged in count IV of the information, possession of amobarbital, and not guilty of counts I, II and III. This appeal is taken from the judgment (order granting probation), defendant contending that the evidence on which he was convicted was the product of an illegal search and seizure.

### STATEMENT OF FACTS

At about 4 o'clock in the afternoon on March 16, 1969, Los Angeles Police Officer David T. McGill, who with Sergeant Wissman was in a marked police vehicle westbound on 48th Street, observed a late model Corvette eastbound on 48th Street going approximately 60 miles per hour in a 35 mile per hour zone. Defendant was the driver. He had a passenger, codefendant Evans (not involved in this appeal). The officers were in plain clothes. Officer McGill tried to note the license number of defendant's car, as his assignment that particular day was to check in that area for grand theft auto. Officer McGill at that time did not have any special reason to believe that defendant's car in particular was stolen. He was checking all cars in the area. Officer McGill made a U-turn to pursue the Corvette in order to check its license number.

Officer McGill observed defendant enter the intersection of 48th Street and Arlington against a red traffic light, make an abrupt stop in the intersection, look, along with Evans, in Officer McGill's direction, then accelerate the Corvette rapidly through the rest of the intersection, still against the red light, and proceed westbound on 48th Street. Officer McGill also went westbound on 48th Street.

At some point during the chase, Officer McGill was able to discern the license number, and "broadcast" it. However he did not hear a response, if one was issued, as to whether it was a stolen car because of the noise and his rate of speed. Apparently, for the same reason, he did not check the sheets within the vehicle to determine if the car was stolen.

In the area of 4th Avenue, Officer McGill turned on his red light and sounded his horn. The Corvette turned left and went through the red light at 4th Avenue and 48th Street and proceeded southbound on 4th Avenue. On that street the Corvette accelerated to in excess of 80 miles per hour and passed one vehicle on the left and three vehicles on the right. The Corvette went through a boulevard stop at 52d Street and through a red

light at 54th Street. It turned left and proceeded eastbound on 54th Street. At this point Officer McGill, in pursuit, had his siren going and the red light on. The Corvette accelerated to in excess of 100 miles per hour eastbound on 54th Street. It went through a red light at 54th Street and Van Ness, passed cars both left and right and crossed over a double center line. At Ruthelen, the Corvette turned right to go southbound and then turned completely around in the intersection and stalled on the southeast curb.

The officers pulled up into the intersection and got out of their vehicle. The defendant got the Corvette going again and started to pull off the curb to go in a westerly direction back on 54th Street. Officer McGill stood in front of the car and drew his gun. Both defendant and the passenger were asked to get out of the vehicle on the passenger side. They did so and were placed under arrest for suspicion of grand theft auto and reckless driving. No more than five or six minutes elapsed between the time Officer McGill first saw the vehicle until the point he stopped it.

Officer McGill began a cursory search of the persons for weapons. At that time at least a half a dozen police units, informed of the pursuit over the radio, arrived to assist. Among the first to arrive was Los Angeles City Police Officer Charles Ernest Patriarca. He completed the cursory search of defendant for weapons by running his hands over his shirt and chest area. Officer Patriarca felt a hard object in defendant's upper right shirt pocket approximately two inches long and an inch in diameter. He "felt it to be a pill container of some sort" and did "not necessarily" have reason to believe that it was a dangerous weapon. Officer Patriarca removed the object. It was a container holding a red and blue plastic capsule. Patriarca then handcuffed defendant and gave him to another police unit. The capsule contained a white powder which later proved to be the amobarbital upon which appellant was found guilty.

### DISCUSSION

The People contend that probable cause existed to arrest appellant for auto theft (Pen. Code, § 487, subd. 3) providing the basis for a search for the fruits, instrumentalities, and evidences of the crime (such as, in this instance, tools, keys and registration slip and such evidences of motivation as narcotics, showing a drug habit to support). (*Chimel* v. *California*, 395 U.S. 752, 763 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034]; *Preston* v. *United States*, 376 U.S. 364, 367 [11 L.Ed.2d 777, 780, 84 S.Ct. 881]; *People* v. *Ross*, 67 Cal.2d 64, 69 [60 Cal.Rptr. 254, 429 P.2d 606] [reversed on other grounds in 391 U.S. 470 (20 L.Ed.2d 750, 88 S.Ct. 1850)]; *People* v. *Jones*, 255 Cal.App.2d 163, 168-169 [62 Cal.Rptr. 848]; *People* v. *Chacon*, 223 Cal.App.2d 739 [35 Cal.Rptr. 799] [grand theft]. See also

*People* v. *Superior Court* [*Kiefer,* real party in interest] (1970) 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449] initially defining purposes of searches when arrests for other than routine traffic offenses are made.)
■ It is unnecessary to determine whether such probable cause existed, although in passing we note that there was much to establish that it did.[1]

■ Clearly, there was probable cause for the arrest for reckless driving; defendant does not contend otherwise. It was recently held in *Morel* v. *Superior Court,* 10 Cal.App.3d 913 [89 Cal.Rptr. 297] that when an officer has taken into custody an alleged offender and is about to transport him, whether to a magistrate only, if the arrestee is able to make bail, or to some place of detention until he shall have made bail, the officer may search the person of the arrestee to protect the transporting officers and to prevent disposition of contraband in the police car during transportation. Under Vehicle Code section 40303, a person arrested for reckless driving, a violation of Vehicle Code section 23103, in the judgment of the arresting officer, shall either be given a 10-day notice to appear or be taken without unnecessary delay before a magistrate. ■ We can assume that, because of the extreme recklessness of defendant's driving, the arresting officers would

---

[1]Probable cause to arrest exists when facts known to the officers at the time would lead a man of ordinary prudence to conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. (*People* v. *Curtis,* 70 Cal.2d 347, 358 [74 Cal.Rptr. 713, 450 P.2d 33]; *People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564].) In the instant case because of Officer McGill's particular assignment to check the area for stolen cars, it was reasonably inferable by him and the trial court that the area was one of high incidence of auto theft. It is true that when the officers turned to follow defendant to check his license, they had no reason to suspect him in particular. However, defendant's conduct in trying to escape, as detailed in the statement of facts, was sufficiently indicative of a desire not to have the license number observed or the vehicle or its registration scrutinized by the police as to justify an immediate suspicion of car theft. Indeed, the officers, for part of the pursuit, were unable to read the license because of defendant's escape tactics. Defendant's wild antics were too extreme to be explained as attempted avoidance of a mere citation for going 60 miles per hour in a 35 mile per hour zone. His speed and recklessness demonstrates that he was determined to avoid police scrutiny despite great risk to himself and others. Defendant contends that the fact that the officers apprehended him without hearing a response to the broadcast of the license number, without checking the "hot car" sheets within the police vehicle, and without checking defendant's driver's license and vehicle registration certificate at the intersection where the chase ended demonstrates that they did not really believe the car was stolen. However, it is significant that the pursuit was wild and short. Officer McGill for good reason did not hear a response regarding the license number. Defendant, after his car stalled, again tried to escape. Officer McGill felt obliged to detain him by standing in front of the car with drawn gun. These circumstances gave reasonableness to a prompt arrest. The arrest as announced, was firstly for grand-theft-auto. About six police cars arrived to help indicating that the radio call for assistance had been an urgent one involving a serious offense.

have opted to take defendant to a magistrate or into detention even if the arrest had been only for reckless driving.

The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.

A petition for a rehearing was denied January 26, 1971.