[Crim. No. 20467. Second Dist., Div. One. Feb. 2, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
BEVERLY FRANCINE RHODES, Defendant and Appellant.

## COUNSEL

H. Russell Halpern, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Daniel J. Kremer and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, Acting P. J.**—Defendant appeals from judgment of conviction on a plea of guilty to possession of dangerous drugs (§ 11910, Health & Saf. Code) after denial of her motion under section 1538.5, Penal Code.

On October 27, 1970, at 8:45 p.m. Officer Laughlin stopped defendant's vehicle because three of four taillights were broken and it bore no license plate light. Because defendant could produce no acceptable identification and there was no registration in the vehicle, the officers ran a warrant check on her which indicated two outstanding warrants from the City of Los Angeles; thereupon she was placed under arrest, transported to the station and booked. During the booking procedure a search of her purse revealed seven LSD tablets and one sodium secobarbital capsule in her wallet. It was stipulated that the amount for which the warrants were issued was $127 and her wallet contained $6.23.

Appellant concedes that pursuant to section 40302, Vehicle Code, Officer Laughlin was obligated to take her into custody, and that a person

may be "skin searched" when placed in jail, but contends that prior to being jailed she must have been given the opportunity to post bail thus, the search of her wallet was illegal. The first part of her contention is correct for both the traffic violation and the Los Angeles city warrants were matters entitling her to release on bail pursuant to a fixed bail schedule on the former, and the terms of the latter. (*Agar* v. *Superior Court,* 21 Cal.App.3d 24, 27-28 [98 Cal.Rptr. 148]; *Carpio* v. *Superior Court,* 19 Cal.App.3d 790, 793 [97 Cal.Rptr. 186]; *People* v. *Mercurio,* 10 Cal.App.3d 426, 429-430 [88 Cal.Rptr. 750].) However, unlike *Agar* v. *Superior Court* and *Carpio* v. *Superior Court,* in which the court under the evidence was entitled to and did assume that the accused would have been able to post the required bail,[1] the evidence introduced by way of stipulation here establishes that defendant could not have posted bail even had she been given the opportunity to do so.

Not having been released on her own recognizance, the only possible way defendant could have avoided being jailed on the warrants was to post bail or have someone do so for her. It is undisputed that she personally could not have posted bail on the traffic violation and on the warrants (the amount for which they were issued was $127), for her wallet contained but $6.23. Moreover, in light of the foregoing, there is no showing that defendant had relatives or friends who might have arranged for bail. In any event, assuming under all of the circumstances that she had been given the opportunity to post bail, the realities of the situation make the prospect of her ability to do so within a reasonable time somewhat doubtful. For her release on bail she would have had to make one or more telephone calls. Whoever she contacted would have had to either bring in the money or contact a bail bondsman and arrange for the bond premium; if that person had not sufficient funds for either purpose it would have been necessary for him to make financial arrangements for such an undertaking which undoubtedly would have caused delay, in all probability a substantial one. Meanwhile it would be the responsibility of police to keep defendant under surveillance. Depending on the extent of the delay in-

---

[1]In *Agar* v. *Superior Court,* 21 Cal.App.3d 24 [98 Cal.Rptr. 148], the court said: "No evidence was introduced to suggest that defendant could not have made bail and would have had to have been jailed." (P. 28.)

In *Carpio* v. *Superior Court,* 19 Cal.App.3d 790 [97 Cal.Rptr. 186], the court said: "It is admitted that there was no reason to assume that petitioner would not have been able to post the required bail bond had he been given the opportunity to do so" (p. 793); and commented in footnote 1 at page 793: "Petitioner had $50 in cash on his person. At oral argument counsel admitted that this was more than enough to cover any potential bond premium and that there was no reason to believe that bond could not, and would not, have been posted promptly on the traffic offenses. In fact, such was the advice given by the arresting officer when he took petitioner to the police station."

volved, the facilities at the station and the manpower available, it is likely that defendant, who was in police custody, would be placed in some kind of detention area in which undoubtedly others would be similarly detained. At this point and before being placed in detention, we are persuaded by the rationale of *Morel* v. *Superior Court,* 10 Cal.App.3d 913, 916 [89 Cal.Rptr. 297], that a search of defendant of the type made here, which was more than a "patdown" for weapons but failed to achieve the indignity of a skin or body search, would be reasonable and proper.

In *Morel,* after having been stopped by police for engaging in a speed contest and arrested pursuant to section 40302, Vehicle Code, defendant was searched prior to being placed in a police car to be transported to the station. The court held that "when the officer has taken an alleged offender into custody and is about to transport him, whether to a magistrate only (if the arrestee is able to make bail) or to some place of detention until he shall have made bail, the officer may search the person of the arrestee. . . . Our reasons are these: (1) A more thorough search for weapons . . . is allowable when the person is in custody. (2) The officer assumes new duties when the arrestee is placed in the police vehicle and the officer has new actions to perform. The officer must prevent escape; he is responsible for the safety of the arrestee; he must attend to driving and cannot give complete attention to the person under his custody; and even if he is relieved from certain other duties while transporting the arrestee, the officer may come upon events in the apprehension of criminals or in other emergencies which require action on his part. (3) The officer may be transporting more than one arrestee and he must give protection to each. (4) Finally, there is the important matter of contraband. There is a natural inclination of the possessor of contraband to dispose of it when he is taken into custody if he has not been able to get rid of it earlier. It is not by any means a speculation that contraband may be deposited in a police vehicle. . . ." (*Morel* v. *Superior Court,* 10 Cal.App.3d 913, 917-918 [89 Cal.Rptr. 297]; *People* v. *Carnesi,* 16 Cal.App.3d 863, 868 [94 Cal.Rptr. 555]; *People* v. *Superior Court* [*Simon*] *(Cal.App.) 93 Cal.Rptr. 879; *Pugh* v. *Superior Court,* 12 Cal.App.3d 1184, 1188 [91 Cal.Rptr. 168].) If the reasons stated in *Morel* justify a search of the person of the accused before he is placed in a patrol car for transportation to a magistrate (if he is able to make bail) "or to some place of detention until he shall have made bail" (*Morel* v. *Superior Court, supra,* 10 Cal.App.3d 913, 917), they are all the more persuasive in justification of a similar search of one who is in police custody and who is about to enter detention in a police station pending the arrival of a bail bondsman or other person. (See *People* v. *Munsey,* 18 Cal.App.3d 440, 448 [95 Cal.Rptr. 811].) The police have

---

*A hearing in the Supreme Court was granted on May 19, 1971. The final opinion of that court is reported in 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205].

a responsibility not only to prevent harm to one in their custody but to prevent any attempt to dispose of contraband either by personal consumption or by abandoning it so that it might be available to others similarly detained. Given the practicalities of the situation and the obvious responsibilities of the police under such a set of circumstances, it would be unrealistic to preclude the officers from making such a search. The search would have revealed and did reveal the contraband in defendant's wallet.

The judgment is affirmed.

Clark, J., concurred.

**THOMPSON, J.**—I concur in the result and reasoning of the majority opinion. That opinion is a skillful analysis of existing precedent and its result is compelled by the more persuasive decisional law dealing with the problem here presented to us.

My quarrel is with much of the recent rash of appellate court opinions dealing with searches incident to arrests without a warrant covered by specific provisions of law as well as by Penal Code section 836. In my personal opinion, those decisions are both an unnecessary expenditure of already strained judicial resources and confusing to trial courts and law enforcement agencies that must govern their action by them. The judicial process would be much better served if in cases such as that considered here we followed the lead of our Supreme Court in *In re Martinez,* 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734], and focused on the rationale of the exclusionary rule. By attempting to pick fly specks out of the pepper of the law of arrest, the propriety of "booking" and the definition of "jailable offenses," Courts of Appeal have needlessly obscured the judicable controversy before them—the determination of whether a defendant was properly found guilty after a fair trial.

While earlier decisional law sometimes expressed the concept that the Fourth Amendment guarantee against unreasonable search by its terms included protection from the consequences of the search, recent high court opinion has abandoned that rationale in favor of a concept of deterrence of conduct violating the Fourth Amendment. (*In re Martinez, supra,* 1 Cal.3d 641, 648.) The deterrent effect is sought by punishing society for the sins of its police agents. Thus the public is denied its interest in the conviction of those who violate its laws where evidence establishing the violation is obtained illegally. The punishment is judicially imposed in the hope that the public will be deterred from countenancing future illegal methods of gathering evidence. It is not the purpose of the

exclusionary rule to permit a guilty defendant to escape punishment where to do so does not achieve the theoretical deterrent function of the rule.

In the context of cases of the type here considered, the purpose of the exclusionary rule is adequately served by the application of a much more direct and simpler test than has been used in recent Court of Appeal decisions. Where, as here, a suspect is arrested for a minor offense, the validity of a search incident to the arrest should be tested by two criteria: (1) was the arrest bona fide rather than merely a pretext for an exploratory search; and (2) was the search one reasonably designed to disclose evidence of the offense for which the suspect was arrested (*People* v. *Yniguez,* 15 Cal.App.3d 669 [93 Cal.Rptr. 444]) or in any way reasonably related to detention of the suspect (see majority opinion). If the arrest is bona fide and the search a reasonable one for evidence of the crime or in any manner reasonably related to the purpose of detention, evidence obtained in the search should be held admissible regardless of the fact that it may disclose guilt of a more serious crime than the one which prompted the arrest. The issue should be treated as one of fact.

Recent Court of Appeal decisions have unnecessarily complicated the problem by emphasizing statutory requirements governing ultimate disposition of the suspect after he is legally arrested and detained. The judicial venture through the looking glass seems to have commenced late in 1969. On November 12, 1969, the Court of Appeal of the First District filed its opinion in *People* v. *James,* 1 Cal.App.3d 645 [81 Cal.Rptr. 845]. It considered the admissibility of seconal tablets obtained in the search of a suspect stopped for speeding who could produce no driver's license or other identification. The court held that the evidence was legally obtained stating: "[B]ecause the respondent was unable to identify himself, the police officer could lawfully arrest him in order to take him before a magistrate as provided in Vehicle Code section 40302, subdivision (a). As the arrest was lawful a search of the respondent was also lawful." (1 Cal.App.3d 645, 648.)

One week later, the Court of Appeal of the Fourth District filed a directly contrary opinion in *People* v. *Dukes,* 1 Cal.App.3d 913 [82 Cal. Rptr. 218]. The court dealt with the admissibility of marijuana obtained in a search of a suspect detained for the traffic offenses of following too closely and permitting an open container of alcoholic beverage in an automobile who was unable to produce a driver's license or other evidence of identification. It held the evidence illegally obtained stating: "That the officers were warranted in taking [the suspect] into custody for the

traffic offenses because of their unsatisfactory identification does not expand the scope of search permissible under the Fourth Amendment to the United States Constitution. Conceding a person arrested for a jailable offense might be searched for contraband in the field (since he may be thoroughly searched when booked to prevent contraband from being introduced into the jail), the custody allowed Vehicle Code section 40302, subdivision (a), is limited to taking the arrestee before a magistrate. If the magistrate is unavailable, the officer must take the arrestee before the clerk of the magistrate or the officer in charge of the jail so he may be admitted to bail. . . ." (1 Cal.App.3d 913, 916.) Having introduced the concepts of "jailable offense" and propriety of "booking," the court concluded that the permissible scope of search in the case of a Vehicle Code arrest could not exceed a cursory pat down for weapons.

Thus *James* and *Dukes* reached opposite results on almost identical facts calling for interpretation of Vehicle Code section 40302, subdivision (a). Unfortunately, a petition for hearing by the Supreme Court was not filed in either case. More unfortunately, *James* and *Dukes* each became the progenitor of its own line of appellate court decisions.

In *People* v. *Tennessee,* 4 Cal.App.3d 788 [84 Cal.Rptr. 697], the Fifth Division of the Second District of the Court of Appeal followed the reasoning of *James* to validate evidence of seconal obtained in the course of booking a suspect arrested for violation of Vehicle Code section 23102 (misdemeanor drunk driving). *Tennessee,* however, cites neither *James* with which it is in accord nor *Dukes* to which it is contra in its rationale.

In *People* v. *Mercurio,* 10 Cal.App.3d 426 [88 Cal.Rptr. 750], the Fourth Division of the Second District of the Court of Appeal followed *Dukes* and invalidated evidence of marijuana found in a search incident to the arrest of a jaywalking suspect unable to produce identification and therefore detained pursuant to Vehicle Code section 40302, subdivision (a). While citing *Dukes, Mercurio* makes no reference to *James* or *Tennessee.*

Eighteen days after *Mercurio,* the Fourth Division of the Court of Appeal for the First District validated the search of a suspect detained for transportation to a magistrate because of a violation of the Vehicle Code's proscription upon speed contests. In *Morel* v. *Superior Court,* 10 Cal.App.3d 913 [89 Cal.Rptr. 297], the court discusses the rationale justifying the search. It states that prudence dictates a thorough search by the detaining officer of a suspect to be taken before a magistrate pursuant to the Vehicle Code to insure that he is not in possession of small weapons

not necessarily disclosed in a pat down, to obtain security from attack and safety of the suspect while he is being transported, and to prevent disposition of contraband in the transporting vehicle. *Morel* expressly declines to follow *Dukes* but does not mention *Mercurio*. It cites neither *James* nor *Tennessee* which are in accord with its holding. Our Supreme Court denied hearing in both *Morel* and *Mercurio*.

The *James, Tennessee, Morel* approach has since been followed to validate searches incident to traffic detentions pursuant to Vehicle Code sections 40302, subdivision (a) and 40303 in *Pugh* v. *Superior Court,* 12 Cal.App.3d 1184 [91 Cal.Rptr. 168], hearing denied; *People* v. *Brown,* 14 Cal.App.3d 507 [92 Cal.Rptr. 473]; *People* v. *Superior Court (Simon* r.p.i.) *(Cal.App.) 93 Cal.Rptr. 879; and *People* v. *Munsey,* 18 Cal. App.3d 440 [95 Cal.Rptr. 811]. The *Dukes, Mercurio* approach has since been followed to invalidate similar searches in *People* v. *Superior Court (Fuller* r.p.i.) 14 Cal.App.3d 935 [92 Cal.Rptr. 545]; *Carpio* v. *Superior Court,* 19 Cal.App.3d 790 [97 Cal.Rptr. 186]; and *Agar* v. *Superior Court,* 21 Cal.App.3d 24 [98 Cal.Rptr. 148].

The conflict in Court of Appeal decisions dealing with searches incident to detention and transportation to a magistrate pursuant to Vehicle Code sections 40302, subdivision (a) and 40303 proved fertile as well as hardy. It has spawned a conflict in a related area. In *People* v. *Yniguez supra,* 15 Cal.App.3d 669, we faced a contention that the *Dukes, Mercurio* rule was applicable to bar evidence of drugs obtained in a search of a defendant arrested for a violation of Vehicle Code section 23102. Noting that section 23102 proscribes driving while under the influence of drugs or the combined influence of drugs and alcohol as well as under the influence of alcohol alone, we held the search valid as one for evidence of the crime for which the arrest was made. We thus did not reach the choice of which of the conflicting lines of cases to follow although stating the presence of the conflict. *Yniguez* was followed in *People* v. *Wilken,* 20 Cal.App.3d 872 [97 Cal.Rptr. 925]. The rare appearance of consistency thus resulting is dispelled by the fact that the rationale of *Yniguez* and *Wilken* has been rejected where the crime for which the arrest is made involves intoxication other than in the course of driving an automobile. Thus the *Dukes, Mercurio* approach was utilized in *People* v. *Millard,* 15 Cal.App.3d 759 [93 Cal.Rptr. 402], and *People* v. *Smith,* 17 Cal.App.3d 604 [95 Cal.Rptr. 229], to invalidate the search of a person arrested for drunk in a public place. The courts there reasoned that since one arrested for that offense may, at the option of the

*A hearing in the Supreme Court was granted on May 19, 1971. The final opinion of that court is reported in 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205].

police, be released without charges being filed, a thorough search of his person is not permitted.

The total disarray of the case law governing searches such as that involved in the case at bench is significant in itself. The exclusionary rule operates to bar evidence obtained because of police misconduct. If society is to punish itself for the misconduct of its police agents, the misconduct should be clear. Case law which bars evidence obtained in situations similar to that here considered finds clear police misconduct in violation of a rule so difficult to formulate that Courts of Appeal cannot agree upon its structure, rationale, or validity. It bars evidence based upon a rule so obscure that decisional law following the rule frequently ignores discussion of a contra group of cases and is itself ignored in the development of the contrary body of law.

Unless we accept the proposition that the exclusionary rule exists as a make-work project for the appellate judiciary, the basis of *Dukes, Mercurio,* and the cases following them, is untenable. The intrusion upon the rights of a person arrested for a traffic offense (or public drunkenness) changes its character when the detaining officer determines to proceed by way of Vehicle Code section 40302, subdivision (a) or 40303 (or their equivalent in the area of drunk arrests). At that point, the offender is not free to leave with a citation recording the charge against him. Rather, he is detained for an extended period to be taken to a magistrate, the magistrate's clerk, or the clerk of a jail. Once that extended detention commences, no bar of evidence of an unsuspected crime will deter a search which by happenstance discloses the evidence. No police officer possessed of his faculties will be convinced by rhetoric of judges, whose exposure to danger has been strictly vicarious, that he should not search beyond a pat down if he feels the person detained by him may conceivably have a weapon in his possession. No officer who risks proper discipline for permitting the introduction of contraband into a jail, police vehicle, magistrate's court, or other public facility will be deterred from a search designed to prevent that occurrence. The bar of evidence in situations such as that here involved thus cannot serve the deterrent purpose of the exclusionary rule. Application of the rule becomes a form of societal masochism, self-punishment of society for the sake of punishment alone.

I thus concur in the result and reasoning of the majority opinion but would go further and adopt a specific set of principles which are not only contrary to the *Dukes, Mercurio* doctrine but which also are directly rationalized by the purposes of the exclusionary rule.

A petition for a rehearing was denied February 29, 1972.