Filed 11/17/23  P. v. Edmonds CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>FRANK EDMONDS,<br><br>　　　Defendant and Appellant. | B319840<br><br>(Los Angeles County<br>Super. Ct. No. TA141211) |

　　　APPEAL from an order of the Superior Court of Los Angeles County.  Laura R. Walton, Judge.  Affirmed.

　　　Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Frank Edmonds appeals the order denying his petition for a finding of factual innocence under Penal Code[1] section 851.8.

Appellant was convicted by a jury of one count of resisting an executive officer in violation of section 69 (count 1).[2] He appealed, and in an unpublished opinion, we concluded that the trial court had prejudicially erred in excluding proffered evidence that the officers were outside of their jurisdiction and had acted unlawfully in detaining appellant. Because the evidence might have negated an element of the charged crime, the error could not be deemed harmless, and we reversed the conviction for resisting an executive officer in violation of section 69. (*Edmonds*, *supra*, B291146.)

In a second amended information, the People charged appellant with one felony count of resisting an executive officer (§ 69; count 1) and one misdemeanor count of resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1); count 3). On September 1, 2020, the trial court dismissed all counts on its own motion in the interest of justice pursuant to section 1385.

On June 10, 2021, appellant filed a petition for a finding of factual innocence on the charge of resisting an executive officer under section 69. The People opposed the petition. At the hearing on the petition, the trial court received evidence and took judicial notice of exhibits and portions of the reporter's transcript

---

[1] Undesignated statutory references are to the Penal Code.

[2] Before trial, appellant had pleaded no contest to count 2, battery committed on school, park, or hospital property (§ 243.2, subd. (a)), and counts 1 and 2 were sentenced together. (*People v. Edmonds* (July 16, 2019, B291146) [nonpub. opn.] (*Edmonds*).) Appellant did not challenge his conviction or sentence on count 2 in his direct appeal.

2

filed in the appeal from the conviction. On January 31, 2022, following argument by the parties, the court denied the petition.

Appellant contends the trial court erred in denying his petition for a finding of factual innocence. He argues that because the incident took place in the City of Lynwood, which is outside the jurisdiction of the Los Angeles Police Department (LAPD), and the officers had no probable cause or even a reasonable suspicion that appellant had committed any crime, the victim, LAPD Officer Jeffrey Joyce, was not lawfully performing his duties as an "executive officer" when appellant resisted the use of force to remove him from his vehicle. Appellant maintains that since he did not unlawfully resist an executive officer, the trial court erred in failing to find him factually innocent of violating section 69, resisting an executive officer. We disagree and affirm the trial court's order denying the petition for a finding of factual innocence.

## FACTS AND PROCEDURAL BACKGROUND

### A. The incident[3]

Around 2:50 p.m. on September 5, 2016, Aaron Thompson, a police officer employed by the LAPD, was on duty in the area of 103rd Street just west of Alameda. A bystander approached the officer and reported a vehicle parked on Alameda with a man behind the wheel who seemed to be passed out. Officer Thompson located the vehicle, parked behind it, and activated his dashboard video camera and hazard lights. As he approached, he could see appellant reclining in the driver's seat, apparently unconscious. Appellant was wearing jeans but no shirt, and was

---

[3] The basic facts of the incident are drawn from our opinion in *Edmonds*, *supra*, B291146.

3

bleeding from small lacerations all over his face, head, and ears. Officer Thompson was unable to wake him. After getting a whiff of alcohol from the car, the officer conducted a "plain sight" look inside the vehicle for alcohol or weapons, but saw neither. He also opened the car doors looking for some identification, but found none. He then called for emergency medical assistance. (*Edmonds*, *supra*, B291146.)

Paramedics were able to awaken appellant, but when they tried to determine appellant's condition, he became agitated, aggressive, and repeatedly got in and out of his car. Officer Thompson called for backup. LAPD Officer Ingram was the first backup to arrive on the scene. He suggested that if appellant did not want medical treatment, "then that's on him," and asked appellant if he could drive. Appellant responded that his car was inoperable. Officer Thompson told him the car would have to be towed because it was parked illegally. (*Edmonds*, *supra*, B291146.)

As other officers arrived on the scene, they discussed what should be done about appellant and the car. Officer Joyce believed they should pull appellant out of the vehicle to allow the police to investigate whether he was suffering from a mental illness, was under the influence of drugs or alcohol, or was a suspect or victim in a crime. Sergeant Sparkman, Officer Thompson's supervisor, questioned why appellant was not already in custody. Officer Thompson responded, "because he was covered in blood. He didn't do anything wrong." At one point during the officers' discussion, appellant got out of the car and kneeled down on the ground where he remained for almost two minutes before reentering the vehicle. (*Edmonds*, *supra*, B291146.)

4

Sergeant Sparkman instructed the officers to put gloves on, which the officers understood to mean they would be "taking the suspect into custody." After putting on his gloves, Officer Joyce said to appellant, "We can't have you sitting in the middle of the road right here. You either go with the ambulance or you go with the police, I'm going to let you decide." Officer Joyce then leaned into the car, removed the keys from the ignition, and tossed them on top of the car. Appellant immediately jumped out of the vehicle and demanded to know what had happened to his keys. Officer Joyce attempted to grab appellant around the waist, but appellant dove back into the car. As Officer Joyce began to give the standard warning that he was about to use his taser, appellant kicked the officer in the right upper thigh with his left leg.[4] Officer Joyce immediately tased appellant in the chest, but the taser appeared to have no effect. (*Edmonds*, *supra*, B291146.)

After being tased, appellant grabbed the steering wheel and braced himself inside the car so the police could not pull him out. Other officers tased appellant several more times, and eventually were able to extract him through the passenger side door and take him into custody. Appellant was transported to the hospital. No investigation was conducted to determine if appellant was under the influence of alcohol or narcotics, and no alcohol, drugs, drug paraphernalia, or weapons were found in the vehicle. (*Edmonds*, *supra*, B291146.)

---

[4] The kick was not captured by any police dashboard video camera at the scene, nor can any reference to the kick be heard on the dashboard audio recording of the incident.

## B. The hearing on the petition for a finding of factual innocence

The hearing on the petition took place on January 27 and 31, 2022. Appellant called four witnesses to testify: Thomas Thornton, the Public Works Director and City Engineer for the City of Lynwood, LAPD Captain Ryan Whiteman, LAPD Sergeant Zadi Borquez-Rivera, and LAPD Officer Matthew Martinez. The trial court admitted into evidence the following exhibits: (1) two parcel maps numbered 24903, one certified on February 23, 2018 (Defendant's exhibit A), the other certified on April 11, 2018 (People's exhibit 1); (2) a Los Angeles County Sheriff's Department map dated January 2004 (Defendant's exhibit C); (3) a Southeast Area Reporting District form (Defendant's exhibit D); and (4) a thumb drive containing a video of appellant in the police vehicle after his arrest (Defendant's exhibit E). The trial court also took judicial notice of the following exhibits attached to appellant's request for judicial notice: exhibits 3 through 10, 14 through 16, 22 through 34, 36 through 42, and 45.[5] Finally, the trial court granted the People's request for judicial notice of volume 3 of the reporter's transcript on appeal in *Edmonds*, *supra*, B291146.

According to Thornton, the address of 10401 South Alameda Street, located on the west side of Alameda Street south of 103rd Street, is in the City of Lynwood. Reading the parcel

---

[5] Other than the transcript of the October 18, 2017 preliminary hearing (exhibit 3) and this court's opinion from the direct appeal (exhibit 42), all of the documents of which the trial court took judicial notice consisted of excerpts from the reporter's transcript on appeal or the reporter's supplemental transcript on appeal.

maps for that area, Thornton confirmed that the measurements for the length of Alameda Street south of 103rd Street in the City of Lynwood to the border with the City of Los Angeles totaled 1,316.96 feet (438.98 yards), and the total distance from the point of contact between appellant and police on the west side of South Alameda Street was 453.98 feet (151.33 yards) from the City of Lynwood's border with the City of Los Angeles. Thornton also testified that he was unaware of any "no parking" signs posted on the west side of Alameda Street within 100 yards of 103rd Street, but he conceded that some parking regulations may have been in effect in that area on September 5, 2016.

Captain Whiteman testified that if a community member required assistance within a reasonable distance of the border with the City of Los Angeles, his expectation as a commanding officer is that an LAPD officer would respond to evaluate the situation and provide aid. If the person were injured, he would expect the responding officer to summon medical assistance. Captain Whiteman further testified that if the individual is in a car and there is an indication he or she might be under the influence, his expectation is that the officer would continue to investigate in the interest of public safety. Responding to a hypothetical based on the facts of this case, Captain Whiteman opined that an officer stationed within Los Angeles city limits on 103rd Street west of Alameda should heed a request to check on a person who appears to be injured and unconscious in a car nearby. Such a situation would present a matter of direct concern to the City of Los Angeles, even if the person in need of aid was in another jurisdiction in close proximity to the City of Los Angeles.

Sergeant Borquez-Rivera testified that he was one of the officers who responded to the scene at 10401 South Alameda on September 5, 2016. During the encounter with the officers, appellant was incoherent, uncooperative, and belligerent, and his behavior was erratic. Sergeant Borquez-Rivera observed that appellant was sweating profusely and appeared to be under the influence of a narcotic or alcohol. When appellant attempted to reenter his car, he seemed to be reaching for something inside the vehicle, possibly arming himself. At that point the vehicle had not yet been searched for weapons, and Sergeant Borquez-Rivera testified he grabbed appellant out of a concern for officer safety. Sergeant Borquez-Rivera testified that while he and Officer Joyce were holding onto appellant, appellant kicked Officer Joyce several times.

Officer Martinez testified he was also present during the police encounter with appellant on September 5, 2016. During the incident, Officer Martinez observed appellant inside the vehicle, outside the vehicle, and reentering the vehicle. The officer testified that police were investigating whether appellant was under the influence of narcotics or alcohol when appellant reentered the vehicle, which had not been searched. Because of the danger presented when the subject of an investigation reenters a car to possibly arm himself or herself, as soon as appellant moved to reenter his vehicle, the officers sought to detain him. After watching the video of the incident, Officer Martinez testified that appellant was already inside the vehicle when Officer Joyce tased him.

## C. The trial court's ruling

The trial court found that appellant's encounter with police took place in the City of Lynwood. But because the incident

8

occurred within 500 yards of the border with the City of Los Angeles, the court concluded that under section 782 and *People v. Rogers* (1966) 241 Cal.App.2d 384 (*Rogers*), Officer Joyce was acting in his capacity as an executive officer in investigating why appellant was passed out behind the wheel of a car, and whether he was under the influence of a narcotic or alcohol in light of his physical condition and erratic behavior. The trial court explained that based on the evidence of appellant's wrongdoing, the officers had a duty to investigate and rightfully detained appellant to continue that investigation.[6]

---

[6] Specifically, the court found "[appellant] was passed out behind the wheel in a public roadway, unable at that time to take care of himself. He continued, once he came to, to act erratically, sweating profusely is the evidence I heard. [¶] He continues to act erratically. He does not listen to [the officers'] commands. They're asking him if he needs help. . . . And he gets out of the car and lays on the ground. [¶] I would assume that he's on something. That he's under the influence of something. He may not have been, but that's his appearance. [¶] That's what [the officer] is acting on. So they have a right to remove the keys based on how [appellant] acted. They have a right to do an investigation as to whether or not he is under the influence. [¶] To do that investigation requires that he be removed from the vehicle. He got out of the vehicle. They were trying to talk to him. He jumped back into the vehicle. . . . [T]he officers indicated when he jumped back in, he appear[ed] to do furtive movements and [was] reaching for something. [¶] They did not want him back into the vehicle because they [had] not checked and made sure that the car had no weapons in it and so he is tased in an [effort] to get him back out of the vehicle because he was not following their commands, their request to cooperate in their detention of him."

9

Based on the evidence presented, the trial court ruled that appellant had not established by a preponderance of the evidence that he was factually innocent of the crime of resisting an executive officer in violation of section 69. Accordingly, the court denied the petition for a finding of factual innocence.

## DISCUSSION

### The Trial Court Did Not Err in Denying the Petition for a Finding of Factual Innocence

#### A. *Relevant legal principles*

##### *1. Section 69, resisting an executive officer*[7]

As we explained in *Edmonds*, *supra*, B291146, the offense of resisting an executive officer in violation of section 69 is committed when a person uses force or violence to knowingly resist an executive officer in the performance of his or her duty. (*In re Manuel G.* (1997) 16 Cal.4th 805, 814 (*Manuel G.*).) It is an element of the offense that the officer is engaged in the lawful performance of his or her duties at the time the resistance occurs. (*Id.* at p. 815; *People v. Wilkins* (1993) 14 Cal.App.4th 761, 778; *People v. Sibrian* (2016) 3 Cal.App.5th 127, 133 ["officer must be acting lawfully when the resistance occurs"]; *People v. Rasmussen*

---

[7] Neither appellant's opening brief nor the memorandum of points and authorities in support of the petition contains any argument for a finding of factual innocence on the charge of resisting, delaying, or obstructing a peace officer in violation of section 148 subdivision (a)(1), as alleged in count 3 of the second amended information. Accordingly, any claim for a finding of factual innocence as to that charge is forfeited. (*People v. Gallardo* (2017) 18 Cal.App.5th 51, 69, fn. 11 [failure to support a claim with relevant legal authority or reasoned argument forfeits the claim on appeal].)

10

(2010) 189 Cal.App.4th 1411, 1418 [section 69 liability requires that officer was lawfully engaged in performance of duty at time of resistance].)  The term "executive officer," while not defined in section 69, has been interpreted to include peace officers at all governmental levels as a matter of law.  (See *Manuel G.*, at pp. 818–819; *People v. Mathews* (1954) 124 Cal.App.2d 67, 68–70; *People v. Kerns* (1935) 9 Cal.App.2d 72, 73–75.)

Section 830.1, subdivision (a) defines "peace officers" to include any police officer employed by a city or a district.  The authority of these peace officers extends to any place in the state with certain limitations.  (§ 830.1, subd. (a); *People v. Pennington* (2017) 3 Cal.5th 786, 793.)  Under section 830.1, subdivision (a)(1), a peace officer has authority "[a]s to a public offense[8] committed or for which there is probable cause to believe has been committed within the political subdivision that employs the peace officer or in which the peace officer serves."  Subdivision (a)(3) of section 830.1 provides that a peace officer has authority "[a]s to a public offense committed or for which there is probable cause to believe has been committed in the peace officer's presence, and with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of the offense."

---

**8** A "public offense" refers to misdemeanors and infractions as well as felonies.  (§ 16; *People v. Zacarias* (2007) 157 Cal.App.4th 652, 658; *People v. Tennessee* (1970) 4 Cal.App.3d 788, 791.)

*2. The petition for a finding of factual innocence under section 851.8*

Pursuant to section 851.8, subdivision (c), "[i]n any case where a person has been arrested, and an accusatory pleading has been filed, but where no conviction has occurred, the defendant may, at any time after dismissal of the action, petition the court that dismissed the action for a finding that the defendant is factually innocent of the charges for which the arrest was made. . . . The hearing shall be conducted as provided in subdivision (b)." Subdivision (b) provides that in any hearing to determine factual innocence, "the initial burden of proof shall rest with the petitioner to show that no reasonable cause exists to believe that the [defendant] committed the offense [charged]. If the court finds that this showing of no reasonable cause has been made by the petitioner, then the burden of proof shall shift to the respondent to show that a reasonable cause exists to believe that the petitioner committed the [charged] offense." (§ 851.8, subd. (b).)

"A petitioner's burden to establish factual innocence has been described as ' "incredibly high" ' and as requiring ' "no doubt whatsoever." ' " (*People v. Mazumder* (2019) 34 Cal.App.5th 732, 738.) Section 851.8 specifically provides "that '[a] finding of factual innocence . . . pursuant to this section shall not be made unless the court finds that no reasonable cause exists to believe' the defendant committed the offense charged." (*People v. Adair* (2003) 29 Cal.4th 895, 904 (*Adair*), quoting § 851.8, subd. (b).) "In other words, the trial court cannot grant relief if *any* reasonable cause warrants such a belief." (*Id.* at p. 904.)

The well-established meaning of "reasonable cause" is " ' "that state of facts as would lead a [person] of ordinary care

12

and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." ' [Citations.] To be entitled to relief under section 851.8, '[t]he [petitioner] thus must establish that facts exist which would lead no person of ordinary care and prudence to believe or conscientiously entertain any honest and strong suspicion that the [petitioner] is guilty of the crimes charged. [Citation.]' [Citation.] [¶] Accordingly, the statutory scheme establishes an objective standard for assaying factual innocence." (*Adair, supra,* 29 Cal.4th at pp. 904–905.)

To carry their respective burdens of proof, both parties "may present evidence such as 'declarations, affidavits, police reports, or any other evidence . . . which is material, relevant and reliable,' including evidence previously suppressed pursuant to sections 1538.5 and 1539." (*Adair, supra,* 29 Cal.4th at pp. 903–904, quoting § 851.8, subd. (b).) But factual innocence under section 851.8, subdivision (b) does not mean simply a failure to convict, a dismissal of charges, the absence of proof of guilt beyond a reasonable doubt or by a preponderance of the evidence, or even that the defendant had a viable substantive defense to the crime charged. (*Adair, supra,* 29 Cal.4th at pp. 905, 909; *People v. Matthews* (1992) 7 Cal.App.4th 1052, 1056 [acquittal does not necessarily establish factual innocence, nor does dismissal in the interests of justice under § 1385].) Rather, to establish factual innocence, the defendant must show that no reasonable cause and no objective factors justified an arrest in the first instance. (*Adair,* at pp. 905, 909; *Matthews,* at p. 1056.) "In sum, the record must exonerate, not merely raise a substantial question as to guilt." (*Adair,* at p. 909.)

13

*3. Standard of review of the denial of a petition for a finding of factual innocence*

On appeal from the denial of a petition under section 851.8, the reviewing court defers to the trial court's factual findings that are supported by substantial evidence, but "must independently examine the record to determine whether the defendant has established 'that no reasonable cause exists to believe' he or she committed the offense charged.  (§ 851.8, subd. (b).)"  (*Adair, supra,* 29 Cal.4th at pp. 897; *id.* at p. 905; see *People v. Medlin* (2009) 178 Cal.App.4th 1092, 1101 [such a strict standard of review is dictated by the Legislature's " 'intent to limit substantially the scope of relief under section 851.8' "].)

As our Supreme Court has explained, this means that "[s]ince the statute precludes a finding of factual innocence if *any* reasonable cause exists to believe the defendant committed the charged offense, in the case of a denial both the trial court and the reviewing court make the same inquiry.  This appears to conflate independent review with the substantial evidence test because the appellate court may approach its task in either of two ways:  It may examine the record de novo to determine whether the defendant failed to meet the burden of 'show[ing] that no reasonable cause exists to believe' the defendant committed the charged offense (§ 851.8[, subd.] (b); see, e.g., *People v. Matthews*, *supra*, 7 Cal.App.4th at pp. 1057–1063); or it may assess whether the trial court's conclusion to that effect is supported by substantial evidence.  Whichever the choice, the analytical perspective is ultimately the same, and the statutory standard is satisfied."  (*Adair, supra,* 29 Cal.4th at pp. 907–908.)

**B. *The trial court properly denied appellant's section 851.8 petition for a finding of factual innocence***

Appellant contends that because Officer Joyce was acting outside of the LAPD's jurisdiction when he detained and arrested appellant in the City of Lynwood, he was acting as a private citizen, not as an executive officer. And since by definition a violation of section 69 cannot be committed against a private person, appellant was factually innocent of the offense as a matter of law. Appellant's argument presumes that once appellant declined medical care or assistance, no cause existed for any further investigation, and the officers' continued contact with appellant—outside of LAPD jurisdiction—was beyond the scope of these officers' duties and was therefore unlawful. We reject appellant's premise, however, and so disagree with his conclusion.

*1. Appellant's conduct during the welfare check supplied a reasonable suspicion of criminal activity that supported an investigative detention*

The undisputed evidence presented at the hearing established that the incident took place in the City of Lynwood within 500 yards of its border with the City of Los Angeles, and appellant concedes the point. Pursuant to section 782, LAPD officers had authority to respond to and investigate the report of an unconscious person behind the wheel of a vehicle parked on the street within 500 yards of the Los Angeles city border.

Section 782 provides: "When a public offense is committed on the boundary of two or more jurisdictional territories, or within 500 yards thereof, the jurisdiction of such offense is in any competent court within either jurisdictional territory."

The court in *Rogers* interpreted this provision to authorize a peace officer to investigate any crime within 500 yards of the jurisdictional boundary in which that officer serves. (*Rogers, supra,* 241 Cal.App.2d at p. 388 ["Since authority to prosecute crime extends to offenses which take place just outside the boundaries of a particular jurisdiction, we believe that, *a fortiori*, authority to investigate crime extends beyond the territorial boundaries of a particular jurisdiction in the same manner and to the same extent"].) The court thus held that a Covina police officer's detention and arrest of a suspect outside the city limits of Covina—but within 500 yards of the jurisdictional border—were within the officer's lawful duties. (*Ibid.*)

Appellant does not dispute that the police were justified in initiating contact with appellant to conduct a welfare check when he appeared to be unconscious behind the wheel of a car parked on a busy thoroughfare. But he contends that "[a]ny right conferred upon the police ended when appellant declined medical treatment." Because he had committed no crime, appellant asserts that Officer Joyce had no probable cause to detain appellant and was not engaged in the lawful performance of his duties when appellant resisted.

As first established by the United States Supreme Court in *Terry v. Ohio* (1968) 392 U.S. 1, 30, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." (*United States v. Sokolow* (1989) 490 U.S. 1, 7 (*Sokolow*).) The reasonable suspicion standard is not particularly high: While it requires "something more than an 'inchoate and unparticularized suspicion or "hunch," ' " the "level of suspicion is

16

considerably less than proof of wrongdoing by a preponderance of the evidence." (*Ibid.*; *United States v. Arvizu* (2002) 534 U.S. 266, 274 (*Arvizu*) ["Although an officer's reliance on a mere ' "hunch" ' is insufficient to justify a stop, [citation], the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard"].)

Thus, " '[a] detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' " (*In re Raymond C.* (2008) 45 Cal.4th 303, 307, quoting *People v. Souza* (1994) 9 Cal.4th 224, 231.) "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 125.)

Here, appellant describes the incident as "a welfare check gone south." Indeed it was. But not because the police lacked a reasonable suspicion of wrongdoing by appellant that warranted investigation. Rather, it was appellant's bizarre and erratic behavior during the welfare check, along with his excessive sweating and an odor of alcohol detected from the vehicle, which justifiably raised a suspicion that appellant was under the influence of alcohol or a controlled substance and presented a danger to the officers, himself, and/or the public.[9]

---

[9] Public intoxication and being under the influence of a controlled substance in a public place constitute disorderly

17

Appellant posits a litany of innocent circumstances that he argues defeat any reasonable suspicion of criminal activity in this case. But "as the high court repeatedly has explained, the possibility of innocent explanations for the factors relied upon by a police officer does not necessarily preclude the possibility of a reasonable suspicion of criminal activity." (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146 (*Letner and Tobin*), citing *Arvizu, supra*, 534 U.S. at p. 274 ["Although each of the series of acts [in *Terry*] was 'perhaps innocent in itself,' we held that, taken together, they 'warranted further investigation' "]; *Sokolow, supra*, 490 U.S. at p. 9 [factors that alone were "quite consistent with innocent travel" collectively amounted to reasonable suspicion]; see also *People v. Glaser* (1995) 11 Cal.4th 354, 373 ["that a person's conduct is consistent with innocent behavior does not necessarily defeat the existence of reasonable cause to detain. [Citation.] What is required is not the *absence* of innocent explanation, but the *existence* of 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion' "].)

In determining whether a reasonable suspicion of criminal activity supported an investigative detention, " ' "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." ' " (*Letner and Tobin, supra,* 50 Cal.4th at p. 147, quoting *Sokolow, supra*, 490 U.S. at p. 10.) Here,

---

conduct, a misdemeanor under Penal Code section 647, subdivision (f). Pursuant to Health and Safety Code section 11550, subdivision (a), it is also a misdemeanor to use or be under the influence of certain controlled substances specified in Health and Safety Code sections 11054 through 11058.

Sergeant Borquez-Rivera and Officer Martinez testified to appellant's erratic behavior and attempt to reenter his vehicle, which had not yet been searched or cleared for weapons. The totality of these and other circumstances surrounding the incident formed the basis for a reasonable suspicion of criminal wrongdoing. The officers' suspicion in turn justified an investigative detention to determine if appellant was publicly intoxicated within the meaning of Penal Code section 647, subdivision (f), or under the influence of a controlled substance under Health and Safety Code section 11550, subdivision (a).

The fact that appellant was ultimately never given a sobriety test and his blood was not drawn to test for alcohol or a controlled substance is irrelevant to the question of whether police had a reasonable suspicion of criminal wrongdoing that warranted scrutiny. The reasonableness of a suspicion to justify investigation does not require a factually correct assessment of the circumstances. (*People v. Saunders* (2006) 38 Cal.4th 1129, 1136; see also *Arvizu, supra,* 534 U.S. at p. 277 ["A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct"].) Similarly, the officers' opinion that appellant was an "idiot" (which of course is not a crime) has no bearing on whether they could harbor a reasonable suspicion that he was under the influence of alcohol or drugs. "[T]he United States Supreme Court has made clear that an officer's subjective intent plays no role in the Fourth Amendment inquiry. 'An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." [Citation.] The officer's subjective motivation is irrelevant.' " (*People v. Ovieda* (2019) 7 Cal.5th 1034, 1052.)

*2. When appellant kicked Officer Joyce, the officer was lawfully performing his duties*

While appellant was sitting in his car and police were trying to determine whether he was under the influence of alcohol or narcotics, Officer Joyce sensibly removed the keys from the vehicle to prevent appellant from driving away. After appellant had gotten out of the car, the officers were then justified in preventing appellant from reentering the vehicle for officer safety. To this end, Sergeant Borquez-Rivera and Officer Joyce grabbed appellant as he was reentering the car because the car had not been searched or cleared for weapons.

The United States Supreme Court has recognized that officer safety is "both [a] legitimate and weighty" reason for ordering a person out of a vehicle during a traffic stop. (*Pennsylvania v. Mimms* (1977) 434 U.S. 106, 110; *Maryland v. Wilson* (1997) 519 U.S. 408, 412; see also *People v. Hart* (1999) 74 Cal.App.4th 479, 490 ["Officer safety is a legitimate and important governmental interest to consider in Fourth Amendment analysis"].) As the high court has observed, "[r]egrettably, traffic stops may be dangerous encounters," and once outside the vehicle, a person "will be denied access to any possible weapon that might be concealed" in the car's interior. (*Wilson,* at pp. 413, 414.) Our Supreme Court has also held that "an officer is authorized to search a vehicle and its occupants based on legitimate and articulated officer safety concerns." (*People v. Schmitz* (2012) 55 Cal.4th 909, 927, fn. 18.)

Here, the officers had the same "legitimate and weighty" concerns for officer safety when appellant dove back inside his car as would have justified ordering him out of the vehicle during their investigation. Officer Joyce was thus engaged in the lawful

20

performance of his duties as an executive officer when he grabbed appellant to try to keep him outside the car and appellant kicked him.

Even if it raises a serious question as to appellant's guilt, the record in this case does not exonerate. (*Adair, supra*, 29 Cal.4th at p. 909.) Rather, we find, as the trial court did, evidence that " ' "would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that appellant [was] guilty" ' " of the crime of resisting an executive officer in violation of section 69. (*Id.* at p. 904.) Accordingly, we affirm the denial of appellant's petition for a finding of factual innocence.[10]

---

[10] Appellant contends the instant case was prosecuted in violation of section 745, subdivision (a)(1) (the California Racial Justice Act). However, appellant never raised the issue in the trial court, and any such claim on appeal is therefore forfeited. (*People v. Pearson* (2013) 56 Cal.4th 393, 416 ["defendant's failure to make a timely and specific objection on the ground he how raises forfeits the claim on appeal"].)

## DISPOSITION

The order denying the petition for a finding of factual innocence is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.