[Civ. No. 27922. First Dist., Div. Four. Aug. 28, 1970.]

JOSEPH ALBERT MOREL, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Spaeth, Blase, Valentine & Klein, Peter A. Whitman and Paul N. Halvonik for Petitioner.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Derald E. Granberg, Jerome C. Utz and John T. Murphy, Deputy Attorneys General, for Real Party in Interest.

## Opinion

**DEVINE, P. J.**—This petition is one in which the issue is that of search of the person of the driver of a motor vehicle who has been arrested for an offense which justified the arresting officer to bring him before a magistrate. The search of petitioner, Morel, produced a bottle of 77 capsules of Secobarbital, a drug which it is forbidden to possess without a physician's prescription. (Health & Saf. Code, § 11910.) Petitioner's motion, under Penal Code section 1538.5, to suppress the evidence was denied and this petition for writ of mandate followed. We granted an alternative writ.

### Facts

At about 1:30 a.m. on August 20, 1969, a police officer of the City of Atherton stopped Morel after observing that he had been engaged in a speed contest of his motorcycle with an automobile, in violation of Vehicle Code section 23109, subdivision (a). The officer called for another unit to stop the other vehicle, demanded and was shown Morel's license, and proceeded to arrest him for safety reasons, rather than citing him to appear before a magistrate. The officer had the right to make this choice under Vehicle Code section 40303. The officer advised Morel of his constitutional rights. He then proceeded to search his person. The upper left-hand pocket of petitioner's jacket contained something which to the officer's touch was a "rather hard firm item." The officer thought that the item "could probably have been a weapon." He took it out and found it to be a plastic bag containing capsules. The capsules, upon later analysis, were found to contain the forbidden drug. Petitioner had made no move toward disposing of the packet, nor had he attemped to interfere with the officer's actions.

### Pat-Down Search

It is doubtful that if there had not been an arrest the discovery of the packet of capsules would have been lawful as the culmination of a pat-down search. Although the officer did testify that the object was rather hard and firm and might have been a weapon, he also testified that upon his feeling it he placed his hand immediately into petitioner's pocket. He testified, too, that he was making a thorough search. In the course of a frisk or pat-down, soft bulges, and in particular plastic or cellophane bags containing pills or the like, ordinarily do not feel like weapons, as has been remarked in *People* v. *Mosher,* 1 Cal.3d 379, 394 [82 Cal.Rptr. 379, 461 P.2d 659], and *People* v. *Hubbard,* 9 Cal.App.3d 827, 831 [88 Cal.Rptr. 411]. See also *People* v. *Collins,* 1 Cal.3d 658, 662, 663-665 [83 Cal.Rptr. 179, 463 P.2d 403]; *Sibron* v. *New York,* 392 U.S. 40, 65 [20 L.Ed.2d 917, 936, 88 S.Ct. 1889].

### The Search as an Incident to an Arrest

■ The general principle is that the search of a person which is incidental to a lawful arrest is valid. (*People* v. *Ross,* 67 Cal.2d 64, 69 [60 Cal. Rptr. 254, 429 P.2d 606]; *Agnello* v. *United States,* 269 U.S. 20, 30 [70 L.Ed. 145, 148, 46 S.Ct. 4]; *People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531]; *In re Dixon,* 41 Cal.2d 756, 761-762 [264 P.2d 513]; *Preston* v. *United States,* 376 U.S. 364, 367 [11 L.Ed.2d 777, 780, 84 S.Ct. 881].) In the case before us, there is no doubt that an arrest was made promptly and firmly. In fact, petitioner was given the full *Miranda* warning before any search was made. There is no suggestion in the record that the arrest was a mere pretext for a search. The officer had made up his mind to take the petitioner into custody. Nor is there anything in the record to suggest that the officer had arrested petitioner on a charge more serious than that which the petitioner would later have to face. The whole record at this stage indicates that the arrest was entirely in good faith.

There is, however, the question of the permissible scope of the incidental search. In the case of misdemeanor traffic offenses as distinguished from most other misdemeanors, there is difficulty in applying the law of search because, as has been noted in *People* v. *Weitzer,* 269 Cal.App.2d 274, 297-298 [75 Cal.Rptr. 318], since in general we use a common system both to regulate traffic and to apprehend, punish and rehabilitate those who commit offenses against persons and property, we are bound to find differences of feeling about the manner in which those quite different sorts of offenses should be dealt with. We find, however, that the Legislature has created distinctions among the kinds of traffic offenses, and those distinctions are helpful in judicial determination of the reasonableness of search of an arrestee.

There are three classes of statutes relating to arrests by peace officers other than highway patrolmen in misdemeanor vehicle cases. The first class, described in Vehicle Code section 40302, comprises those offenses wherein the arrested person *shall* be taken before a magistrate. These are: a) when the arrestee fails to present his driver's license or other satisfactory evidence of identity; b) when he refuses to give his written promise to appear in court; c) when he demands an immediate appearance before a magistrate; and d) when he is charged with violating Vehicle Code section 23102 (misdemeanor drunk driving), section 23102.5 (misdemeanor driving under the influence of poison), or section 23106 (misdemeanor driving under the influence of drugs). The second class is contained in Vehicle Code section 40303. Besides several provisions relating to refusals to submit to lawful tests, failure to stop after an accident, attempting to evade arrest, and driving while a license is suspended or revoked, section 40303 lists other

offenses which have an element of considerable wilfulness about them, namely, violation of sections 10852 or 10853, relating to injuring or tampering with a vehicle; sections 23103 or 23104, relating to reckless driving; section 23332, relating to trespassing on a vehicular crossing (a toll bridge); and the one involved in the case before us, section 23109, relating to participating in speed contests or exhibitions of speed. In cases of arrests covered by section 40303, the arrested person shall, in the judgment of the arresting officer, either be given a ten-day notice to appear or be taken without unnecessary delay before a magistrate. The third class of cases comprises the large number of other misdemeanors under the Vehicle Code. Here, the arresting officer must issue a citation under section 40500. Technically, a traffic violator is, during the period immediately preceding his execution of a promise to appear, under arrest. (*People* v. *Hubbard, supra,* 9 Cal.App.3d at p. 833; *People* v. *Weitzer, supra,* 269 Cal.App.2d at p. 294; *People* v. *Valdez,* 239 Cal.App.2d 459, 462 [48 Cal.Rptr. 840].) A person under this kind of arrest only may not be searched because he cannot be taken into actual custody.

■ In the case before us, which involved a speed contest, the officer was entitled to bring the arrested person before a magistrate under the provisions of section 40303. It is obvious that a contest of speed, the concentration of the drivers of the vehicles being on defeating an opponent rather than on the safety of users of the highway, is one of the most serious of traffic offenses even though it is a misdemeanor.

We believe it is not necessary in order to justify the thorough search of one who has been arrested for such an offense as engaging in a speed contest to decide whether or not his violation of law was a "jailable offense," which would allow a jailhouse search and, therefore, by anticipation a search in the field. ■ We hold that when the officer has taken an alleged offender into custody and is about to transport him, whether to a magistrate only (if the arrestee is able to make bail) or to some place of detention until he shall have made bail, the officer may search the person of the arrestee. (In the argument in the superior court, reference was made to the "patrol car," and at the preliminary hearing there was testimony that petitioner was "transported" to the station.) ■ Our reasons are these:

1) A more thorough search for weapons, perhaps smaller ones and less typical than those looked for in the pat-down, and also for any instruments which might facilitate escape, is allowable when the person is in custody.

2) The officer assumes new duties when the arrestee is placed in the police vehicle and the officer has new actions to perform. The officer must

prevent escape; he is responsible for the safety of the arrestee; he must attend to driving and cannot give complete attention to the person under his custody; and even if he is relieved from certain other duties while transporting the arrestee, the officer may come upon events in the apprehension of criminals or in other emergencies which require action on his part.

3) The officer may be transporting more than one arrestee and he must give protection to each.

4) Finally, there is the important matter of contraband. There is a natural inclination of the possessor of contraband to dispose of it when he is taken into custody if he has not been able to get rid of it earlier. It is not by any means a speculation that contraband may be deposited in a police vehicle. As an example, there is the recent case of *People* v. *Peterson,* 9 Cal.App.3d 627 [88 Cal.Rptr. 597], in which a bag of hashish was discovered under the seat where the defendant had been sitting in the police car. The defendant had been handcuffed, with his hands behind him. There were two other prisoners in the automobile and Peterson had contended that the contraband did not belong to him. He contended that the hashish could not have been his because he had been searched at the place of arrest. The officers testified that he had been given merely a cursory search before he was placed in the vehicle. The conviction of Peterson was affirmed. It may be that the officers in that case had conducted as efficient a search in the field as was possible under the circumstances. The point that we make is that the discarding of contraband in a police vehicle is by no means an unlikely event.

■ Search as thorough as is practicable under the circumstances before a person under arrest is placed in a police vehicle seems to us to be thoroughly justifiable for the fixing of responsibility on the right party if contraband is found in the car. Thus, not only is the guilty party identified but those who are innocent are protected. The police, too, are relieved from the awkward situation of having had contraband deposited in their vehicle.

There are but few cases relating to search as justified by the impending transportation in a police vehicle, probably because the principle of the validity of search as incident to arrest is so well established that it has been described as axiomatic. (*People* v. *Ross,* 67 Cal.2d 64, 69 [60 Cal.Rptr. 254, 429 P.2d 606].) In *Charles* v. *United States,* 278 F.2d 386, however, the court, referring to such a search, made upon the offense of threatening assault and battery (in the then Territory of Hawaii), said (at pp. 388-389): "To say that the police may curtail the liberty of the accused but refrain from impinging upon the sanctity of his pockets except for enumerated reasons is to ignore the custodial duties which devolve upon

arresting authorities. Custody must of necessity be asserted initially over whatever the arrested party has in his possession at the time of apprehension. Once the body of the accused is validly subjected to the physical dominion of the law, inspections of his person, regardless of purpose, cannot be deemed unlawful, see People v. Chiagles, 1928, 237 N.Y. 193, 142 N.E. 583, 32 A.L.R. 676, unless they violate the dictates of reason either because of their number or their manner of perpetration." And in a footnote, at page 389, referring to possible denial of search before arrival of the patrol wagon, the court said: "We would only be affording the accused the opportunity to dispose of incriminating evidence before he reaches the place of initial detention."

It remains for us to discuss California cases which may seem to be or in fact may be contrary to our opinion. In *People* v. *Graves,* 263 Cal.App.2d 719 [70 Cal.Rptr. 509], the arresting officer had probable cause for believing that the defendant had committed a robbery and he was therefore justified in conducting a thorough search of the defendant's person; wherefore, the matter of traffic offenses was not a critical question in the case. The officer, however, had announced to the prisoner that the arrest was upon outstanding traffic warrants, no doubt, as the court remarked, because the arrest of a suspected robber upon traffic warrants is less apt to provoke a hostile confrontation than an announced arrest for robbery. In the course of its discussion of traffic arrests, the court said that a valid arrest for a traffic offense does not justify a complete search of the arrestee's person for evidence of other unrelated crimes unless the officer has probable cause for believing that the traffic offender is guilty of a crime other than the traffic offense for which he is being arrested. (263 Cal.App.2d at pp. 733-734.) This language, however, does not necessarily conflict with our decision. The officer in the instant case was not searching particularly for evidence of unrelated crimes. If contraband were found and a prosecution for possession of it followed, this was simply an effect of a protective search: protective against weapons and protective against disposing of unlawful objects within the vehicle. As it was put cogently in *Cotton* v. *United States,* 371 F.2d 385, 393: "If a lawful search or examination produces evidence of other crimes than that for which the prisoner was arrested, that is not something to which he can object."

Moreover, in the *Graves* case the court pointed out that the record did not show what kind of traffic offenses had been the basis for issuing of the warrants. In our case, custody clearly was warranted by a statute. We find nothing in the *Graves* case which conflicts with our holding.

In *People* v. *Dukes,* 1 Cal.App.3d 913 [82 Cal.Rptr. 218], the subject of justification of the search of the arrestee because of forthcoming trans-

portation was not discussed. This is an essential distinction from our case. In the *Dukes* case, it was held that the search at the place of arrest was invalid, although the taking into custody was lawful because the arrestee, who had gone through a red light, had not been able to produce identification. It was held that the search could not be justified as being anticipatory of a search at the jail because of the Vehicle Code's requirement that the arrestee be taken before a magistrate, or if he be unavailable, before the magistrate's clerk or the officer in charge of the jail, so that he may be admitted to bail. (Veh. Code, § 40307.) As we have said above, we do not base our holding upon the proposition that violation in the case before us would result in petitioner's incarceration, but upon the reasonableness of protecting the arresting officers and of preventing disposition of the contraband during transportation. We observe, too, that there is a distinction between the kind of search which can be made in the field and that which is ordinarily conducted at the jail in order to prevent the introduction of contraband. When a prisoner is about to be incarcerated, a strip search is customary as distinguished from the search of pockets, purses and the like at the scene of the arrest. The strip search is, of course, a much greater indignity. The distinction has been pointed out in *United States* v. *Caruso,* 358 F.2d 184; and see McIntyre, *Intensive Search of a Suspect's Body and Clothing,* 58 Journal of Criminal Law, Criminology and Police Science 18.

We note that the *Dukes* case rests in part upon *People* v. *Graves,* which we have distinguished above, and also upon *Sibron* v. *New York,* 392 U.S. 40, 65 [20 L.Ed.2d 917, 936, 88 S.Ct. 1889]. But the *Sibron* case involved a frisk *before arrest.* So did the case cited by petitioner, *Byrd* v. *Superior Court,* 268 Cal.App.2d 495 [73 Cal.Rptr. 880]. Distinction between the two types of cases is explicitly made in *People* v. *Collins,* 1 Cal.3d 658, 664 [83 Cal.Rptr. 179, 463 P.2d 403]. The recent decision of *People* v. *Mercurio, ante,* p. 426 [88 Cal.Rptr. 750], follows *Dukes* and is subject generally to the same distinctions. In *Mercurio,* there was the additional problem of the lawfulness of the arrest of a pedestrian for violation of Vehicle Code section 21456, subdivision (b) (jaywalking) when the pedestrian was unable to give satisfactory identification, a question which the court abstained from deciding. Under all of the circumstances, we find that under the ultimate test of the Fourth Amendment, that is, whether the search is or is not reasonable, the balance weighs against petitioner.

The petition for writ of mandate is denied and the alternative writ is discharged.

Rattigan, J., and Christian, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied on October 22, 1970.