[Civ. No. 10496. Fourth Dist., Div. Two. Nov. 9, 1970.]

ROBERT FRANKLIN PUGH, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Sprague & Milligan and Wallace B. Farrell for Petitioner.

No appearance for Respondent.

Byron C. Morton, District Attorney, and Gerald D. Polis, Deputy District Attorney, for Real Party in Interest.

## OPINION

KERRIGAN, J.—Petitioner seeks prohibition for two purposes: (1) To suppress the admission in evidence of six amphetamine tablets which were seized by law enforcement officers as a result of an alleged illegal search, and (2) to restrain the superior court from conducting any further criminal proceedings upon an information charging him with unlawful possession of dangerous drugs, to wit, the aforesaid pills. (Health & Saf. Code, § 11910.) Extraordinary relief was sought in this forum following denial of petitioner's motion to suppress evidence (Pen. Code, § 1538.5) in the superior court.

About 1 a.m. on January 29, 1970, two highway patrol officers on routine patrol duty stopped a Dodge Charger being driven by Elsnor Howard Lupo. Petitioner, the owner of the car, was seated in the right front seat. After interviewing the driver briefly, the officers concluded that Lupo was intoxicated. While Officer Wilburn administered a series of field sobriety tests, Officer Warrick directed petitioner to remain seated in the car and kept him under surveillance from a vantage point at the right rear of the car. Following administration of the simple sobriety tests, Lupo was arrested for driving under the influence. (Veh. Code, § 23102, subd. (a).) Officer Wilburn, with Lupo's consent, then undertook a breathalyzer test. At the conclusion of the Mobat test, Lupo was handcuffed and searched. In searching his pockets, Officer Wilburn found several benzedrine tablets.

While the foregoing field and chemical tests were being administered, petitioner remained seated in the Dodge in conformity with Officer Warrick's request. He did not appear to the officer either to be drunk or under the influence of drugs. Rather, he was cooperative and furnished proper identification upon request. Suddenly, during rendition of the Mobat test, Officer Warrick saw the petitioner glance quickly to the rear towards Lupo and Wilburn and make a "very quick movement" with his left hand towards the pivotal ashtray located in the dashboard. When Warrick inquired as to what he was doing, petitioner removed the insert tray and dumped the contents on the ground outside the right front door. The officer examined both the ashtray and the ground and found nothing but ordinary debris.

At that point, Officer Wilburn yelled to Officer Warrick to the effect that he had also arrested Lupo for possession of dangerous drugs [benzedrine]. Officer Warrick then placed petitioner under arrest for the same offense. Petitioner was handcuffed and subjected to a personal search. The car was also searched and six amphetamine tablets wrapped in tinfoil were discovered secreted behind the removable pivotal ashtray located in the dashboard.

Petitioner raises the following issues in claiming that the search which resulted in the discovery of the six amphetamine tablets was illegal

and his arrest unlawful: (1) The search of the driver's [Lupo's] person was improper in that it exceeded a limited "pat-down" for weapons; and (2) the search of the car was likewise invalid as being beyond the authorized scope of an arrest for a traffic offense.

Petitioner initially maintains that the search of Lupo's clothing and pockets was unwarranted in that it exceeded a "pat-down" for weapons.

The general principle has been formulated that a limited search of a person incidental to a lawful arrest is valid. (*Chimel* v. *California,* 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 693-694, 89 S.Ct. 2034].) The problem in applying the principle arises in connection with the permissible scope of the incidental search. In the case of misdemeanor traffic offenses, as distinguished from most other misdemeanors, some difficulty has been experienced in search cases inasmuch as the Legislature has adopted a common system both to regulate traffic and to apprehend, punish, and rehabilitate those who commit offenses against persons and property. (See *People* v. *Weitzer,* 269 Cal.App.2d 274, 297-298 [75 Cal.Rptr. 318].)

Fortunately, the Legislature has created distinctions among the kinds of traffic offenses, and those distinctions are helpful in the judicial determination of the reasonableness of the search of traffic arrestees. (*Morel* v. *Superior Court,* 10 Cal.App.3d 913, 916 [89 Cal.Rptr. 297].)

There are three broad classes of statutes involving the arrest of a driver or issuance of a citation to the driver,[1] in misdemeanor traffic cases: The first comprises those offenses wherein it is provided that the driver shall be taken into custody and taken before a magistrate. These offenses are: (1) When the driver fails to present his driver's license or other satisfactory evidence of identity; (2) when he refuses to give a written promise to appear in court; (3) when he demands immediate appearance before a magistrate; or (4) when he is charged with the misdemeanors of driving while under the influence of alcohol, poison, or drugs. (Veh. Code, § 40302.)

The second type of violation grants the option to the arresting officer either of giving the driver a 10-day notice to appear or taking him into custody and taking him before a magistrate. These offenses are generally defined as follows: (1) refusal to submit to lawful test; (2) failure to stop after an accident; (3) attempting to evade arrest; (4) driving with a suspended or revoked license; (5) tampering with a vehicle; (6) reckless driving; (7) trespassing on a vehicular crossing [toll bridge]; and (8) engaging in a speed contest or speed exhibition (Veh. Code, § 40303).

---

[1]While a traffic violator is, during the period immediately preceding his execution of a promise to appear, under arrest in a technical sense (see *People* v. *Hubbard,* 9 Cal.App.3d 827, 833 [88 Cal.Rptr. 411]), a legal arrest is ordinarily deemed to occur when he is taken into actual custody.

The third class of cases embraces the balance of the misdemeanor offenses defined in the Vehicle Code. The officer is only authorized to issue the driver a citation for such infractions. (Veh. Code, § 40500.)

■ It is now settled that when an officer has taken an alleged traffic offender into custody and is duty-bound to transport him either to a magistrate or to some place of detention, the officer may conduct a thorough search of the arrestee's person for the purpose of protecting the arresting officer from harm and of preventing disposition of contraband during transportation. (*Morel* v. *Superior Court, supra,* 10 Cal.App.3d 913, 917-918; see also *Chimel* v. *California, supra,* 395 U.S. 752, 764 [23 L.Ed.2d 685, 694].)

■ While we recognize that there is California authority to the effect that a valid arrest for a traffic offense does not justify a complete search of the arrestee's person (*People* v. *Graves,* 263 Cal.App.2d 719, 733-734 [70 Cal.Rptr. 509]) but merely a limited search [pat-down or "frisk"] for weapons (*People* v. *Dukes,* 1 Cal.App.3d 913, 916 [82 Cal.Rptr. 218]), the limited search doctrine governs only those cases wherein the traffic violator is merely detained for the purpose of being issued a citation, not those situations wherein he is arrested and taken into custody.

■ Consequently, Officer Wilburn, having arrested the defendant's driver [Lupo] for driving while under the influence of intoxicating liquor, a custodial offense (see Veh. Code, §40302, subd. (d)), acted properly in searching Lupo's person for the purpose of discovering a weapon or destructible evidence prior to placing him in the police car.

The search of Lupo's person having been lawful, the issue next arises whether the officers were justified in searching the petitioner's car. ■ While a stop for a minor traffic violation, without more, does not generally justify a search of the vehicle (see *People* v. *Weitzer, supra,* 269 Cal.App.2d 274, 290; *People* v. *Van Sanden,* 267 Cal.App.2d 662, 664-665 [73 Cal.Rptr. 359]) other than for weapons (*People* v. *Graves, supra,* 263 Cal.App.2d 719, 732-733), the validity of vehicle searches incident to the arrest of one or all of its occupants has generally been upheld. (*People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Gil,* 248 Cal.App.2d 189, 191-192 [56 Cal.Rptr. 88].)

The United States Supreme Court has made a strong distinction between the warrantless search of an automobile and a house or an office, based on the mobility of the vehicle and the impracticability of securing a search warrant. (See *Carroll* v. *United States,* 267 U.S. 132, 153 [69 L.Ed. 543, 551, 45 S.Ct. 280, 285]; *Brinegar* v. *United States,* 338 U.S. 160 [93 L.Ed. 1879, 69 S.Ct. 1302]; *Chimel* v. *California, supra,* 395 U.S. 752, 764 [23

L.Ed.2d 685, 694, 89 S.Ct. 2034, 2040]; *Chambers* v. *Maroney,* 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975].)

Petitioner's reliance on *Chimel, supra,* is, therefore, not persuasive. The fact that the driver [Lupo] was manacled and outside the vehicle and could neither destroy evidence in the vehicle nor seize a weapon is immaterial.

Lupo had been arrested for driving while under the influence of alcohol. Obviously, the trial court could have determined that the officer acted reasonably in searching the vehicle for either an alcoholic container or for narcotics or dangerous drugs. Because of the similarity in symptoms, a person arrested for driving while under the influence of alcohol could also be operating the car while under the influence of narcotics or under the influence of both alcohol and dangerous drugs. It was imperative that the officers search immediately for either alcohol or dangerous drugs; a vehicle is movable, particularly so when the owner is seated within. Following the vehicle until a warrant could be obtained or tracing the car hours or even days later is a highly impractical alternative to an immediate search. (*Chambers* v. *Maroney, supra,* 399 U.S. 42.)

The question whether Officer Warrick was justified in placing the defendant under arrest thus appears irrelevant. Inasmuch as the officers had probable cause to arrest Lupo and to search his person as well as petitioner's car, the question as to whether probable cause existed for petitioner's arrest does not require resolution as the search of the car, resulting in the discovery of the six tablets, was justified on the basis of Lupo's arrest. Moreover, the fact that petitioner's arrest preceded the search is inconsequential.

The petition for writ of prohibition is denied; the alternative writ is discharged.

Tamura, Acting P. J., and Kaufman, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied December 30, 1970. Peters, J., was of the opinion that the petition should be granted.