**STATE of Delaware, Plaintiff Below, Appellant,**

v.

**Joseph WAUSNOCK, Defendant Below, Appellee.**

Supreme Court of Delaware.

March 12, 1973.

Daniel A. Durkin, Deputy Atty. Gen., Wilmington, for plaintiff below, appellant.

Arlen B. Mekler, Asst. Public Defender, and Roger A. Hines, Wilmington, for defendant below, appellee.

Before WOLCOTT, C. J., and CAREY and HERRMANN, JJ.

HERRMANN, Justice:

This is an appeal by the State, taken by leave of Court under 10 Del.C. § 9903,* from an Order of the Superior Court suppressing evidence for violation of the search and seizure provisions of the Fourth Amendment. The appeal brings up for review the reasonableness of the pre-arrest search, without a warrant, of an automobile stopped by police for a traffic violation.

As the result of the suppression of evidence here under review, the Superior Court entered an Order, dated February 24, 1972, reciting that the "Attorney General has no evidence to present as a direct result of having had evidence suppressed"; and thereupon ordering "that this criminal action be dismissed."

I.

A threshold question presented is whether the Order below is a "final order" reviewable in a § 9903 discretionary appeal under State v. Roberts, Del.Supr., 282 A.2d 603 (1971).

The Order below, dismissing "this criminal action", is equivalent to a "final order" constituting "dismissal of an indictment" which is appealable by the State under § 9902 as a matter of right. The dismissal of an indictment or information, or any count thereof, is appealable by the State as of right under § 9902, without limitation. State v. Fischer, Del.Supr., 278 A.2d 324 (1971).

---

* The text of 10 Del.C. §§ 9902 and 9903, applicable in this case, is set forth in

State v. Fischer, Del.Supr., 278 A.2d 324 (1971), hereinafter mentioned.

Since this appeal may have been brought by the State as a matter of right under § 9902, it matters not that it was mislabeled and handled originally as a discretionary appeal under § 9903. See State v. Dobies, Del.Super., 290 A.2d 663 (1972).

The appeal is in order.

## II.

The sole question presented for review is whether the evidence in this case should have been suppressed.

At 2:30 a. m. on a Sunday, the defendant drove his automobile through a stop sign and almost collided with a police patrol car at the intersection. There was a male passenger in the front seat alongside the defendant. The two police officers in the patrol car followed the defendant's car at a distance of about 50 feet. They saw the defendant bend down and reach under the driver's seat three or four times. The reaching was strenuous enough to cause the defendant's automobile to "weave" slightly from side to side. The defendant was "holding the steering wheel with his left hand and with his right hand was reaching underneath the seat, taking his eyes off the road." The officer driving the patrol car "had a strong idea" that the defendant "might possibly be reaching for a gun." For that reason, he decided not to stop the defendant's automobile until it was out of the residential area. Upon stopping the defendant's car, the police officers approached with service revolvers at the ready. The defendant and his companion were instructed to go to the rear of their car. Implementing the thought that the defendant might have been reaching for a weapon, one of the officers immediately searched under the driver's seat. There he found a smoker's pipe with screen-type dia-

phragm in the bowl; and in the open ash tray on the dash board, the officer found a hand rolled cigarette.

The defendant was initially arrested for the traffic violation and later charged with possession of marijuana. 16 Del.C. § 4722. The pipe and the cigarette were the subjects of the suppression order which led to the dismissal of the action and this appeal.

## III.

■ A limited protective search for a weapon was reasonable under the circumstances of this case.

The "issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Brown v. State, Del.Supr., 295 A.2d 575 (1972); Nash v. State, Del.Supr., 295 A.2d 715 (1972). The care of the reasonably prudent man, in this context, is to be measured by the temper and tempo of the times, including the number of criminal assaults upon policemen suffered in the line of duty.* Moreover, the applicable standard of care is not to be measured solely as of the moment of search when driver and passenger were outside the automobile; it is to be measured, also, as of the time when they may have been permitted to return to the automobile.

The prescribed test was met here: the police officers, as reasonably prudent men in the totality of the circumstances, had good cause to experience fear for themselves or others. Accordingly, the limited protective search here conducted was reasonable and, therefore, permissible under the Fourth Amendment.

In State v. Culver, Del.Supr., 288 A.2d 279, 285 (1972), we endorsed the following

---

* "Figures reported by the Federal Bureau of Investigation indicate that 125 policemen were murdered in 1971, with all but five of them having been killed by gunshot wounds. * * * According to one study, 30% of police shootings occurred when a police officer approached a suspect seated in an automobile." Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 f. n. 3 (1972).

The F.B.I. reports that 112 police officers were murdered in 1972, with 108 killed by firearms.

statement of the Supreme Court of the United States in Terry v. Ohio, 392 U.S. 1, 23, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968):

"We are * * * concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

"In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence * * *."

Those views have become ever more meaningful with the passage of time.

It follows that since the contraband was seized in the course of a lawful search, the "fruits" of the search were not "tainted". Aaron v. State, Del.Supr., 275 A.2d 791 (1971).

This conclusion includes not only the pipe found where a weapon was suspected, but also the cigarette which was then in "plain view" of the searching officer. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971).

### IV.

We do not reach the interesting question of whether a certain odor, noticed by the police to be emanating from the defendant's automobile, afforded probable cause sufficient to permit a search for drugs without a warrant. 11 Del.C. § 2302.

One officer testified that, upon approaching the defendant's automobile, he smelled a certain odor: "This odor had given me the thought of marijuana. It was very sweet. It had the odor to my senses of the smell of cinnamon. It was a sharp cinnamon smell, so that was an indication to me that there was possible marijuana." The officer testified that his judgment was based upon a 25-hour general criminal law course covering many subjects, including "aspects of marijuana, the smell, the odor, being sweet, like possibly burning rope, burning rags."

The other officer testified: "I can't say what I smelled, because all I can remember is a funny odor. What it smelled like, I don't know. I couldn't say it was rags, ropes, or just what it was. It was something funny that I hadn't smelled before * * *."

Fortunately, we are not required to delve further into the odoriferous aspects of the case thus presented.

\* \* \* \* \* \*

It is the opinion of this Court that the evidence should not have been suppressed.