**Marcus J. GOLDSMITH, Appellant, Defendant Below,**

v.

**STATE of Delaware, Appellee, Plaintiff Below.**

Supreme Court of Delaware.

Submitted June 22, 1979.

Decided July 18, 1979.

L. Vincent Ramunno, Wilmington, for appellant, defendant below.

John T. Gandolfo, Jr., Deputy Atty. Gen., Wilmington, for appellee, plaintiff below.

Before McNEILLY, QUILLEN and HORSEY, JJ.

McNEILLY, Justice:

Defendant, Marcus J. Goldsmith, appeals from his Superior Court jury convictions of possession with intent to deliver a narcotic schedule I controlled substance, possession of a narcotic schedule I controlled substance, and possession of a deadly weapon during the commission of a felony. It is defendant's contention that his car was improperly stopped; that his car was searched in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, Section Six of the Delaware Constitution, and that the Trial Court erred by admitting evidence of drugs and evidence of a physical attack by defendant upon a witness subpoenaed for trial.

## I

Defendant was arrested at approximately 8:40 p. m. by Wilmington detectives, Guy Sapp and Jonathan Sines, at 7th and Tatnall Streets, in Wilmington, an area requiring more than routine police patrolling and surveillance because of the frequency of criminal activity related to the use of alcohol and drugs in and about the bars there. On this occasion the detectives' attention was focused on a Buick automobile which struck a car parked to its rear with such force that the officers observed the other car move in a rocking type motion. The driver of the Buick then abruptly pulled out of the parking space without stopping to check for damage. Suspecting that the driver was intoxicated the officers followed the Buick to determine if the driver was capable of operating it.

After stopping the Buick, Detective Sapp walked alongside of the vehicle from the rear and observed through the right rear window a male passenger sitting in the back seat pushing an object between the backrest and the seat. Detective Sapp ordered the driver, Marcus Goldsmith, and the other male occupant, Michael Murray, out of the car. Being afraid that Murray may have placed a gun between the backrest and seat, he felt that for his safety and his partner's safety he should determine what was there. As Detective Sapp tried to reach into the back seat, two of the three females remaining in the car pushed and pulled him away. After removing them from the car he reached into the back seat where he had observed Murray concealing an object and pulled out a plastic bag containing glassine packets. While performing a weapon pat-down of the defendant and Murray, Detective Sines found additional plastic bags containing glassine packets. All totaled, the bags contained 224 small glassine packets of a clear white powder later determined by the Medical Examiner's office to be heroin.

## II

The threshold question in this appeal is the propriety of the stopping of defendant's automobile, the first automobile stop case before this Court since the decision of this Court in *State v. Prouse,* Del.Supr., 382 A.2d 1359 (1978), *aff'd,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In affirming this Court's decision, the Supreme Court, per Mr. Justice White, stated:

"The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief. *United States v. Martinez-Fuerte,* 428 U.S. 543, 556–558, 96 S.Ct. 3074, 3082–3083, 49 L.Ed.2d 1116 (1976); *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975); cf. *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law-enforcement agents, in order ' "to safeguard the privacy and security of individuals against arbitrary invasions . . . ." ' *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312, 98 S.Ct. 1816, 1820 [, 56 L.Ed.2d 305] (1978), quoting *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). Thus, the permissibility of a particular law-enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against 'an objective standard,' whether this be probable cause or a less stringent test. In those situations in which the balance of interests precludes insistence upon 'some quantum of individualized suspicion,' other safeguards are generally relied upon to assure that the individual's reasonable expectation of privacy is not 'subject to the discretion of the official in the field,' *Ca-*

mara v. Municipal Court, supra, 387 U.S. at 532, 87 S.Ct. at 1733. See id., at 534–535, 87 S.Ct. at 1733–1734; Marshall v. Barlow's, Inc., supra, 436 U.S. at 320–321, 98 S.Ct. at 1824–1825; United States v. United States District Court, 407 U.S. 297, 322–323, 92 S.Ct. 2125, 2139, 32 L.Ed.2d 752 (1972) (requiring warrants)."

\* \* \* \* \* \*

"Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." 99 S.Ct., at 1396–7, 1401 (footnote references omitted).

Mr. Chief Justice Burger delivering the opinion of the Court in Brown v. Texas, —— U.S. ——, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) further stated:

"We have recognized that in some circumstances an officer may detain a suspect briefly for questioning although he does not have 'probable cause' to believe that the suspect is involved in criminal activity, as is required for a traditional arrest. United States v. Brignoni-Ponce, supra, 422 U.S., at 880–881, 95 S.Ct., at 2580. See Terry v. Ohio, 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 882 (1968). However, we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. Delaware v. Prouse, supra, at 654, 99 S.Ct., at 1396; United States v. Brignoni-Ponce, supra, 422 U.S., at 882–883, 95 S.Ct., at 2581; see also Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1938)."

\* \* \* \* \* \*

"When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. See Delaware v. Prouse, supra, at

663, 99 S.Ct., at 1401." 99 S.Ct., at 2641.

■ In this case the circumstances preceding the stopping of defendant's automobile justified a reasonable suspicion that he was driving under the influence of alcohol or drugs. The fact that the defendant was in a neighborhood known to the officers as an area of criminal activity related to alcohol and drugs, was not in itself sufficient for the officers to conclude that defendant was under the influence of alcohol or drugs. But Detective Sapp testified that it had been his experience that a person under the influence of either drugs or alcohol has extreme difficulty in parking a car. The availability of alcohol in the neighborhood and the officer's experience, together with the officers' observation of defendant's backing into a parked car and abrupt driving off without stopping to check for damage, were sufficient objective criteria to have given the officers an "articulable and reasonable suspicion" that defendant was intoxicated. Given the commonly known statistics on highway safety, the police officers obviously have a duty to attempt to insure safe highways. As a result, defendant's stop was a lawful seizure pursuant to the principles announced in Prouse, supra, and Brown, supra.

III

The defendant argues that the search of defendant's automobile violated the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, Section Six of the Delaware Constitution under the standards established in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

"The Court recognized in Terry that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from a hostile suspect. 'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for con-

cealed weapons." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972), quoting *Terry, supra*; see *Nash v. State,* Del.Supr., 295 A.2d 715 (1972).

In *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the Court reiterated the weapons search standard announced in *Terry* as being "whether 'the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate.' " 98 S.Ct., at 334.

■ In this case the male passenger, Michael Murray, was seen by Detective Sapp concealing something between the backrest and the seat. Detective Sapp removed the two male occupants from the car leaving three females in the car. Detective Sapp testified that he was afraid Murray may have placed a gun there, and he felt that his safety and his partner's safety required him to recover whatever was there. We are satisfied under the circumstances that Detective Sapp acted as a reasonable and prudent man and was justified in believing that his and his partner's safety were in danger. We find these conclusions are sufficient to justify a *Terry* search. See also *State v. Wausnock,* Del.Supr., 303 A.2d 636 (1973).

### IV

■ Defendant's contention that the State failed to show a proper chain of custody of the drugs is without merit. The record shows that Detective Sapp placed the sealed drug envelope in the safe at the Records Division in the presence of his lieutenant. Sergeant Walsh, the only person having a key to the drug safe, retrieved the envelope, determined that it had not been tampered with, and placed it in the safe at the Armory. Two days later Sergeant Walsh took the envelope to the Medical Examiner's office where it was opened, the contents counted and placed back in the envelope, which was then resealed and initialed by Sergeant Walsh and the receiving clerk. The same clerk retrieved the en-velope from the Medical Examiner's safe. She gave it to Mr. Hsu, who also counted the packets, analyzed the contents, and found it to be heroin. The drugs were replaced in the envelope, resealed, and returned to Sergeant Walsh, who inadvertently destroyed them prior to trial.

As this Court said in *Tatman v. State,* Del.Supr., 314 A.2d 417 (1973):

"To be sure, the State is obliged to account for its careful custody of evidence from the moment the State is in receipt of the evidence until trial. The State need not, however, prove beyond all possibility of doubt the identity of the evidence or the improbability of tampering; it need only prove that there is a reasonable probability that no tampering has occurred. *Clough v. State,* Del.Super., 295 A.2d 729 (1972)." 314 A.2d, at 418.

■ The defendant claims that the *Clough* test has not been met because the contents of the packets seized from defendant were not available at trial or for an analysis by an expert of defendant's choice. In this case no application was made by defendant to have his own analysis made until the middle of trial. The Trial Judge properly denied the application as untimely.

■ We are satisfied that the *Clough* test enunciated in *Tatman* has been met through the analysis made by the Medical Examiner's office and that the Medical Examiner's report was properly admitted in evidence by the Trial Judge. We reserve until another day our decision on a timely application filed under similar circumstances.

### V

Finally defendant contends that certain testimony of Michael Murray, admitted into evidence as admissions of guilt by misconduct constituting an obstruction of justice, was so inflammatory and prejudicial that it denied defendant due process and a fair trial. In substance the testimony referred to was that defendant on two occasions attempted to bribe Murray, who was under

subpoena to testify at trial on behalf of the state. Defendant wanted Murray to claim the drugs were his and not defendant's so that defendant could "beat the case." When Murray refused on the second occasion, defendant shot Murray in the back as he attempted to flee, and then shot at his head after Murray had fallen to the ground.

■ The general rule relied upon by defendant is that evidence of prior crimes is inadmissible in a criminal trial to prove that defendant committed the crime at issue. *Renzi v. State,* Del.Supr., 320 A.2d 711 (1974); *Benson v. State,* Del.Supr., 395 A.2d 361 (1978).

■ The evidence here was admitted by the Trial Judge as an exception to the general rule on the theory that, upon the trial of a criminal case, acts, conduct, and declarations of the accused occurring after the commission of an alleged offense which are relevant and tend to show a consciousness of guilt or a desire or disposition to conceal the crime are admissible in evidence. *State v. Berry,* Mo.App., 526 S.W.2d 92, 101 (1975). See also 29 Am.Jur.2d *Evidence* § 293; Annot., 62 A.L.R. 136 (1929); *United States v. Flick,* 7 Cir., 516 F.2d 489, *cert. denied,* 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975); *Lambert v. State,* Ala. Crim.App., 55 Ala.App. 669, 318 So.2d 364 (1975); *People v. Slocum,* Cal.App., 52 Cal. App.3d 867, 125 Cal.Rptr. 442 (1975), *cert. denied,* 426 U.S. 924, 96 S.Ct. 2635, 49 L.Ed.2d 379 (1976).

■ The Trial Judge properly admitted the disputed evidence of defendant's attempts to bribe and criminally assault upon the State's subpoenaed witness. In addition, the jury was properly instructed at some length as to the limited consideration to be given the testimony during its deliberations.*

\*    \*    \*    \*    \*    \*

AFFIRMED.

---

\* Following admission into evidence of the disputed testimony, the Trial Judge instructed the jury:

> "Before you start, Mr. Maguire, members of the jury, I have permitted this witness to testify concerning an event which occurred in Philadelphia in the past few weeks. This defendant is not charged in this case with that altercation, and he's not to be judged in this case based on that altercation; that is, whether he committed those offenses or not. That testimony is offered by the State solely to indicate whether this defendant had a criminal intent then, that is, at the time this incident occurred, to exculpate himself; that is, to eliminate himself or to interfere with the prosecution of this case, as an indication of his possible guilt. Now, whether it shows that or not is up to you to decide, and you will have to decide that based on any other or further evidence about it. But you must bear in mind that this defendant is not charged in this case with any assault, with any shooting, with any obstruction of justice. That evidence is before you solely as additional material bearing upon what his intent was at the time of the offenses last March, and that's all that is before you. I'll instruct you further about that at the conclusion of the case."